## ADKINSON v. STATE.  (4 Div. 91.)

(Court of Appeals of Alabama.  Jan. 12, 1926.
Rehearing Denied Feb. 9, 1926.)

**1. Criminal law ⬤⟿878(3), 1172(8)—Verdict of assault and battery operates as acquittal of charge of assault with intent to murder, and questions relating to felony charge only need not be considered on appeal.**

Verdict of assault and battery operates as acquittal on charge of assault with intent to murder, and refused charges and other questions which relate to felony charge only need not be considered on appeal.

**2. Criminal law ⬤⟿753(2).**

Affirmative charge for accused was properly refused, where evidence was in sharp conflict.

**3. Criminal law ⬤⟿829(5)—Abstract charge as to duty resting on defendant to retreat from own house properly refused when covered in oral charge.**

Charge, stating abstract proposition of law that no duty rests on defendant to retreat from his own house, held properly refused when substantially covered in oral charge.

**4. Criminal law ⬤⟿761(2)—Homicide ⬤⟿301 —Charge on defendant's right to act in behalf of sister held properly refused as abstract, and as assuming controverted fact.**

Charge that defendant, charged with assault to murder, had same right to act in behalf of his sister as he had to act in his own behalf, held properly refused as abstract, and for further reason that it assumed existence of controverted fact.

**5. Criminal law ⬤⟿404(1)—Permitting party alleged to have been assaulted to testify that some of the shots were still in him, and point out places, held proper.**

In prosecution for assault with intent to murder, permitting alleged injured party, on re-direct examination, to testify that some of shots were still in him, and point out the places, held proper, as corroborative of actual shooting complained of.

**6. Witnesses ⬤⟿372(2)—Excluding question as to whether brother of eyewitness to shooting was charged with previous shooting at defendant's home held proper, as not showing bias of witness.**

In prosecution for assault with intent to murder, where eyewitness to shooting had testified on cross-examination that her relations with accused were friendly, it was proper to exclude question as to whether her brother was not charged with previous shooting at defendant's home, as having no tendency to prove bias of witness.

**7. Homicide ⬤⟿338(1)—In prosecution for assault with intent to kill, error as to evidence as to shooting in defendant's house held beneficial to him.**

In prosecution for assault with intent to murder, error cannot be predicated on improper rulings permitting inquiry into alleged shooting in defendant's house; such rulings being beneficial to defendant.

Appeal from Circuit Court, Barbour County; J. S. Williams, Judge.

Dan Adkinson was convicted of assault and battery, and he appeals. Affirmed.

Charges 9 and 11 sought to instruct the jury, in effect, that defendant had the same right to act in behalf of his sister as he had to act in his own behalf.

Sollie & Sollie, of Ozark, for appellant.

Charges 9 and 11 were correct and should have been given. Carr v. State, 17 So. 350, 106 Ala. 35, 34 L. R. A. 634, 54 Am. St. Rep. 17; Whatley v. State, 91 Ala. 108, 9 So. 336; Gibson v. State, 91 Ala. 64, 9 So. 171. Charge 13 was erroneously refused. Terry v. State, 105 So. 386, ante, p. 100. The fact that the brother of a witness was charged with shooting members of defendant's family should have been admitted to show bias. Lodge v. State, 26 So. 210, 122 Ala. 97, 82 Am. St. Rep. 23; Jones v. State, 76 Ala. 8; Garner v. State, 101 So. 506, 20 Ala. App. 268. Evidence that the house of the witness had been shot into the day before should have been admitted. Polk v. State, 62 Ala. 237; Holmes v. State, 14 So. 864, 100 Ala. 80; Salm v. State, 8 So. 66, 89 Ala. 56.

Harwell G. Davis, Atty. Gen., and Robt. G. Tate, Asst. Atty. Gen., for the State.

There is no error in refusing abstract, misleading, or argumentative charges. The authorities cited by appellant are inapt. The court's rulings on admission of evidence were free from error.

BRICKEN, P. J.  [1] The indictment charged the defendant with a felony "assault with intent to murder." The trial resulted in a verdict of guilty of an assault and battery, and judgment of conviction was pronounced accordingly. The verdict of the jury operated as an acquittal of the defendant upon the charge of assault with intent to murder; therefore such refused charges and other questions presented which relate to the felony charge only need not be considered on this appeal.

None of the given or refused charges are numbered or otherwise designated. As a result, it is difficult to discuss the several charges refused to defendant. Special written charges should always bear some designation, by number or letter, in order that

they may be identified. When this is not done confusion of charges is most likely to follow here, as well as in the trial court. In order that the special charges contained in this record may be identified we will number them. As here numbered charges 1 to 8, inclusive, are the "given charges," and 9 to 15, inclusive, are the charges refused to defendant. Charges 12, 14, and 15 relate to the felony only, pretermitting any consideration other than the fact that they do relate to the felony charge only. This, as stated, would be sufficient to justify the court in having refused them.

[2] Charge 10 was the affirmative charge. It cannot be seriously insisted that the defendant was entitled, as a matter of law, to have the verdict directed by the court in his behalf, for the evidence was in sharp conflict, and a jury question was presented. This charge was properly refused.

[3] Charge 13 states an abstract proposition of law, that there is no duty resting upon defendant to retreat from his own house. If no other reason appeared to justify the court in the refusal of this charge, the fact that in the oral charge to the jury the court fairly and substantially covered the proposition of law contained herein would be sufficient. In this connection the court, in the oral charge, stated:

(1) "Our law does not require a man to retreat from his own house or home." (2) "If I am absolutely free from fault in bringing on a difficulty, and if my life be in danger, the danger which I have just defined to you, or if I am so situated that a reasonable man, placed as I then am, would entertain the honest belief that life or limb was in danger, the law doesn't impose on me in my own house or under my own roof the duty to retreat; I may then stand my ground even to the extent of slaying my adversary."

[4] The remaining refused charges not hereinabove discussed, to wit, 9 and 11, were properly refused as being abstract. The evidence adduced by defendant disclosed that at the time defendant fired upon Miles his (defendant's) sister, Sarah Lou, was not present, but was away from the scene of difficulty and inside the house of defendant; it being manifest therefore the sister was in no danger of any character from the party attacked at the time the defendant fired upon him. Al Henry Vaughan v. State, 107 So. 797,[1] and cases cited. Moreover, the charges were objectionable in giving undue prominence to the fact of the presence of defendant's sister at the home of defendant at the time of the difficulty. The state's insistence was that she was not there at the time, and offered proof tending to show that fact. As to whether she was present or not at the time of the shooting was a question for the jury, and charges of this character had the tendency to preclude the jury from considering this

[1] Ante, p. 204.

controverted fact; the charges, as worded, having the effect of assuming the sister was present. However, in any event they were, as stated, refused without error.

The exceptions reserved to the court's oral charge are wholly without merit. The charge of the court was full, fair, and explicit, and ably stated the law of this case in its every phase. The remaining insistences of error are based upon the rulings of the court upon the admission of the evidence.

[5] It was proper for the state to prove by its witness Warren Miles, the alleged injured party, on redirect examination, "thère are some of the shots still in me," * * * "there's one in my finger," * * * "the raised place on my finger is where the shot is." These physical facts were corroborative of the actual shooting complained of in the indictment and there was no error in allowing this proof to be made.

[6] Witness Mae Grubbs was examined by the state, and testified to the effect that she was an eyewitness to the shooting by defendant of Miles; the charge here being predicated upon said shooting. On cross-examination she, among other things, testified as follows:

"I haven't got a thing in the world against Dan. I say my feelings are friendly towards him. I was with Ed Hurst and Freeman Miles and Joe and Henry Grubbs up to Dan's house the day before this shooting, but there wasn't no guns fired that day we went up there, only what they shot. Dan's wife shot us. Our crowd didn't have any guns. I'm telling you the truth. I haven't seen that house full of shots. The defendant hasn't done any thing to me; his wife shot at us. I did go with that crowd up there to Dan's the day before this when all that shooting took place. Joe Grubbs is my brother."

She was then asked: "And your brother is charged with that shooting, isn't he?" Upon objection by the state the court would not allow the witness to answer. It is insisted that in this ruling the court committed reversible error. We do not so conclude. It is elementary that bias of a witness can always be shown, but we are of the opinion that the mere charge, or accusation, against the brother of witness as to a prior shooting would have no tendency to prove the bias of this witness. The brother in question was not a witness in this case. We do not regard the cited case of Lodge v. State, 26 So. 210, 122 Ala. 97, 82 Am. St. Rep. 23, as being in point here. There appears no analogy in the facts of that case to the case at bar. The evidence at this stage affirmatively showed that the brother of this witness had not fired at the house of defendant on the day preceding, but that the only shooting done upon that occasion was by the wife of defendant. We know of no rule of evidence which would permit an accused to prefer mere charges against his adversary witness and thereby lessen the weight of the testimony of such witness. Such a rule would accord to one charged

with crime an opportunity by his (accused's) own acts to detract from the weight ordinarily accorded to evidence, and, by his own acts, a rule of this character would permit a defendant to affect the credibility of all the witnesses who were called upon to testify against him.

[7] In this case we do not regard the alleged shooting into the house of defendant on the day before "by some one," as a proper inquiry. The fact, however, that the court allowed such proof, although manifestly an improper inquiry injecting in the case on trial a foreign and immaterial issue, cannot be complained of by defendant, as such improper rulings were beneficial to defendant, and could have in no manner prejudiced his cause before the jury.

With the exception of the court's rulings upon the testimony of Dr. Norton on his being recalled by the state, the remaining exceptions contained in this record relate to the rulings of the court as to the alleged shooting into defendant's house on the day before. As above stated, this was an improper inquiry, the facts, circumstances, and details of said alleged shooting were irrelevant, immaterial, and inadmissible, and while we do not regard any of the rulings complained of as being error, if error was shown in this connection, we would not predicate a reversal of the judgment of conviction thereon.

There was no error in the rulings of the court upon the evidence of Dr. R. O. Norton when recalled by the state on rebuttal. The inquiry in this connection was merely to fix the time of the alleged offense, and for such reason the court properly allowed the examination of this witness to proceed as shown by this record.

After a careful consideration of every proposition presented by this record, we are convinced that this appellant has been accorded a fair and impartial trial, and that such trial proceeded throughout without prejudicial error such as would justify a reversal of the judgment of conviction.

As the record proper is also without error, the judgment of the circuit court will stand affirmed.

Affirmed.

